UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

Grand Jury N-13-1

| | |
|---|---|
| UNITED STATES OF AMERICA | : Criminal No. 3:15 CR OL ( JAM ) |
| | : |
| v. | : VIOLATIONS: |
| | : 18 U.S.C. § 1343 (Wire Fraud) |
| IAN PARKER BICK | : 18 U.S.C. § 1957 (Money Laundering) |
| | : 18 U.S.C. § 1001 (Making a False Statement) |
| | : 18 U.S.C. § 981(a)(1)(C) (Forfeiture) |
| | : 28 U.S.C. § 2461(c) (Forfeiture) |

**INDICTMENT**

The Grand Jury charges:

Counts One through Eleven
Wire Fraud
(18 U.S.C. §§ 1343 and 2)

At all times relevant to this Indictment:

The Defendant and Entities Controlled by Defendant

1.      Defendant IAN PARKER BICK ("Defendant BICK") resided in Danbury,

Connecticut.

2.      Defendant BICK controlled and was a principal and/or managing member of various

entities which had offices in Connecticut, including among other entities: This Is Where It's At

Entertainment, LLC, and Planet Youth Entertainment both with offices located at 85 Old Boston

Post Road, Danbury, Connecticut; and W&B Wholesale, LLC, ("W&B Wholesale") and W&B

Investments, LLC, ("W&B Investments") both with offices located at 39 Old Ridgebury Road,

Danbury, Connecticut.

3.      Defendant BICK operated and controlled bank accounts in his own name and in the

names of the above referenced entities at numerous financial institutions which are engaged in,
and the activities of which affect interstate and foreign commerce including Wells Fargo Bank,
People's United Bank, Savings Bank of Danbury, and Union Savings Bank.

### The Victim-Investors

4.     As described in more detail below, Defendant BICK, together with his business
partners, induced numerous victim-investors to provide him funds for investments based on false
and fraudulent pretenses, representations, and promises, including falsely representing that he
could obtain for them high rates of return by, among other ways, buying and selling electronics
merchandise.

5.     Certain victim-investors and family members of victim-investors, whose identities are
known to the Grand Jury, are referred to herein by their initials: E.B., R.B., B.L., G.M., L.M.G.,
D.P., E.P., R.P., H.S., S.T.  These victim-investors, and other victim-investors known and
unknown to the Grand Jury, are referred to collectively herein as "victim-investors."

### The Scheme to Defraud

6.     From in or about October 2012 and continuing until the date of this Indictment, in the
District of Connecticut and elsewhere, Defendant BICK knowingly, willfully, and with intent to
defraud, devised and intended to devise a scheme and artifice to defraud and to obtain money
and property by means of materially false and fraudulent pretenses, representations, and
promises, and for the purpose of executing such scheme did knowingly transmit, and cause to be
transmitted, by means of wire communication in interstate and foreign commerce, certain
writings, signs, signals and sounds.

### The Purpose of the Scheme to Defraud

7.     The purpose of the scheme to defraud was for Defendant BICK to enrich himself, his

various entities and certain associates by defrauding victim-investors out of money and property by means of materially false and fraudulent pretenses, representations, and promises.

<u>The Manner and Means of the Scheme to Defraud</u>

The manner and means by which Defendant BICK sought to accomplish and did accomplish the purpose of the scheme to defraud included, among others, the following:

8.    It was part of the scheme to defraud that Defendant BICK would and did solicit investments from his friends, former classmates, acquaintances, and their parents by promising high investment returns over relatively short periods of time.

9.    It was further part of the scheme to defraud that Defendant BICK would and did falsely represent to victim-investors that he could generate the high investment returns as promised by using their funds to purchase electronics and electronic devices, such as iPhones and head phones, and resell the electronics *via* the internet on sites such as eBay.

10.    It was further part of the scheme to defraud that Defendant BICK falsely represented to certain of the victim-investors that he had made significant profits organizing and promoting concerts in the past when, in truth and in fact, he had not made significant profits organizing and promoting concerts as he had represented.

11.    It was further part of the scheme to defraud that Defendant BICK falsely represented to certain of the victim-investors that he could generate the high investment returns as promised by using their funds to organize and promote various concerts, including concerts purportedly scheduled at various venues in Connecticut and Rhode Island.

12.    It was further part of the scheme to defraud that Defendant BICK would and did enter into various investment contracts termed "Loan Agreements" with victim-investors. Defendant BICK executed the Loan Agreements on behalf of W&B Wholesale and on behalf of

- 3 -

W&B Investments using the title Managing Member, promising significant returns on the investments in relatively short periods of time such as a matter of weeks or months.

13.     It was further part of the scheme to defraud that Defendant BICK would and did enter into various investment contracts termed "Music Venture Participation Agreements" with victim-investors.  Defendant BICK executed the Agreements on behalf of Planet Youth Entertainment LLC using the title Member, promising the funds would be used for the arrangements and promotion of specific scheduled events and profits would be shared.

14.     It was a further part of the scheme to defraud that Defendant BICK would and did induce victim-investors to provide funds to him and the above referenced entities by electronic funds transfers, personal and cashier's checks, and cash, purportedly to be used for investment purposes, and did so by falsely and fraudulently representing, among other things, that:

      a.   he was successfully promoting concerts and generating profits from the various events, profits in which certain victim-investors could share;

      b.   the victim-investors' money would be used by him to purchase various consumer electronics such as iPhones at discounts to be resold online through sites such as eBay thus generating investment profits;

      c.   the victim-investors' money would be used by him to fund business operations and were not being used for any individual or household purposes; and

      d.   the victim-investors could obtain a significant rate of return in a relatively short period of time by investing with him and his companies and would receive both interest and a return of their investment principal;

when in truth and in fact, as Defendant BICK well knew, he was not running profitable businesses, as the concerts were not generating significant profits as represented; he was not purchasing electronics and reselling any electronics on-line *via* sites such as eBay; and the funds

he received from victim-investors would not be used as represented but would in fact be used for personal expenses including paying back other victim-investors.

15.    It was further part of the scheme to defraud that Defendant BICK failed to invest the money as represented and instead diverted victim-investors' funds for his own personal use and benefit, including such personal expenses as hotel stays and jet skis.

16.    It was further part of the scheme to defraud that Defendant BICK would and did seek to lull victim-investors into believing that their funds had been invested as represented and sought to prevent and forestall the discovery of the scheme by, among other ways, issuing payments to the victim-investors purportedly as "interest payments" and as "return of principal," but which were, in truth and in fact, funded using monies diverted from the investment funds of other victim-investors.

17.    It was further part of the scheme to defraud that Defendant BICK would and did further seek to delay and forestall the discovery of his scheme by inducing victim-investors to "reinvest" the purported principal being returned and the purported interest payments and put the money back into the scheme, thus avoiding the need for Defendant BICK to actually provide the promised returns on investments to the victim-investors.

18.    It was further part of the scheme to defraud that Defendant BICK knowingly made a material false statement to Postal Inspectors from the United States Postal Inspection Service in response to specific questions.  In particular, when asked about the manner in which he used funds that victim-investor H.S. invested with Planet Youth Entertainment LLC in July 2013, Defendant BICK falsely stated that "70-80% of the money had been on 'artist deposits,'" when in truth and in fact, 70-80% had not been spent on artist deposits, but instead had been spent on personal expenses and as purported investment "returns" to other victim-investors.

Execution of the Scheme

19.     On or about the dates set forth below, in the District of Connecticut and elsewhere,

for the purpose of executing and attempting to execute the aforementioned scheme and artifice to

defraud and to obtain money and property by means of materially false and fraudulent pretenses,

representations, and promises, Defendant BICK did knowingly transmit and cause to be

transmitted by means of wire communication in interstate and foreign commerce certain

writings, signs, signals and sounds, as set forth below, each such use of the wires constituting a

separate count of this Indictment:

| Count | Date | Description of the use of the interstate wires |
|-------|------|------------------------------------------------|
| 1 | 6/21/2013 | Transfer of $30,000 of funds *via* interstate wires from Bank of America *via* official bank cashier's check ending in 0146 with remitter victim-investor H.S. payable to the order of IAN BICK deposited and cleared into Planet Youth Entertainment account at Savings Bank of Danbury ending in 3747. |
| 2 | 7/3/2013 | Wire transfer of $20,000 of funds *via* interstate wires from the account of victim-investors R.B. and R.P. at JP Morgan Chase ending in 8195 to W&B Wholesale account at Wells Fargo ending in 3191. |
| 3 | 7/11/2013 | Transfer of $116,000 of funds *via* interstate wires from Bank of America *via* official bank cashier's check ending in 0231 with remitter victim-investor H.S. payable to the order of Planet Youth Entertainment deposited and cleared into Planet Youth Entertainment account at Savings Bank of Danbury ending in 3747. |
| 4 | 7/12/2013 | Transfer of $100,000 of funds *via* interstate wires from Bank of America *via* official bank cashier's check ending in 0230 with remitter victim-investor H.S. payable to the order of W+B Wholesale LLC deposited and cleared into W&B Wholesale account at Wells Fargo ending in 3191. |
| 5 | 7/25/2013 | Wire transfer of $30,000 of funds *via* interstate wires from the account of W&B Wholesale at Wells Fargo ending in 3191 to the account of victim-investors R.B. and R.P. at JP Morgan Chase ending in 8195. |
| 6 | 7/26/2013 | Wire transfer of $50,000 of funds *via* interstate wires from the account of victim-investors R.B. and R.P. at JP Morgan Chase ending in 8195 to W&B Wholesale account at Wells Fargo ending in 3191. |

| Count | Date | Description of the use of the interstate wires |
|-------|------|------------------------------------------------|
| 7 | 7/29/2013 | Wire transfer of $50,000 of funds *via* interstate wires from the account of victim-investors D.P. at Wells Fargo ending in 2922 to W&B Wholesale account at Wells Fargo ending in 3191. |
| 8 | 9/5/2013 | Wire transfer of $4,975 of funds *via* interstate wires from the account of victim-investor G.M. at JP Morgan Chase ending in 4012 to W&B Wholesale account at Wells Fargo ending in 3191. |
| 9 | 9/16/2013 | Wire transfer of $10,000 of funds *via* interstate wires from the account of victim-investor B.L. at Bank of America ending in 6271 to W&B Wholesale account at Wells Fargo ending in 3191. |
| 10 | 10/15/2013 | Wire transfer of $10,000 of funds *via* interstate wires from the account of victim-investor R.P. at JP Morgan Chase ending in 0617 to W&B Wholesale account at Wells Fargo ending in 3191. |
| 11 | 11/1/2013 | Transfer of $55,000 of funds *via* interstate wires from Sovereign Bank *via* business check number 5574 from account ending in 7409 from victim-investor L.M.G. made payable to the order of W&B Investments deposited and cleared into W&B Investments LLC account at People's United Bank ending in 1059. |

All in violation of Title 18, United States Code, Sections 1343 and 2.

Counts Twelve Through Fourteen
Money Laundering
(18 U.S.C. §§ 1957 and 2)

20.     The allegations contained in Paragraphs 1 through 18 of Counts One through Eleven

of this Indictment are repeated, realleged, and incorporated by reference as though fully set forth

herein.

21.     On or about the dates listed for each count below, Defendant BICK did knowingly

engage and attempt to engage in monetary transactions in criminally derived property of a value

greater than $10,000, all involving financial institutions which are engaged in, and the activities

of which affect, interstate commerce, such property having been derived from specified unlawful

activity, that is, wire fraud in violation of 18 U.S.C. § 1343 as follows:

| Count | Date | Funds Attributable To: | Monetary Transaction |
|-------|------|------------------------|----------------------|
| 12 | 7/10/2013 | Investment of victim-investor H.S. | Check number 355 in the amount of $25,000 payable to Aqua LLC, drawn on an account controlled by Defendant BICK in the name of Planet Youth Entertainment, LLC account ending in 4737 at Savings Bank of Danbury and negotiated on or about July 11, 2013. |
| 13 | 7/15/2013 | Investment of victim-investor H.S. | Withdrawal of $18,750 from an account controlled by Defendant BICK in the name of W&B Wholesale LLC account ending in 3191 at Wells Fargo and deposited into the account of victim-investor E.P. also at Wells Fargo |
| 14 | 7/26/2013 | Investments of victim-investors H.S., S.T., and R.B. | Purchase of Cashier's Check number ending in 0370 in the amount of $21,900 made payable to Danbury Power Sports, drawn on an account controlled by Defendant BICK in the name of W&B Wholesale LLC account ending in 3191 at Wells Fargo and used for the purchase of two Yamaha brand jet skis and a Triton brand trailer. |

All in violation of Title 18, United States Code, Sections 1957 and 2.

<u>Count Fifteen</u>
False Statement
(18 U.S.C. § 1001)

22.     The allegations contained in Paragraphs 1 through 18 of Counts One through Eleven of this Indictment are repeated, realleged, and incorporated by reference as though fully set forth herein.

23.     On or about June 26, 2014, in the District of Connecticut, in a matter within the jurisdiction of the executive branch of the United States, namely the Department of Justice and the United States Postal Inspection Service, Defendant BICK did knowingly and willfully make a false, fictitious, and fraudulent material statement to representatives of the United States Postal Inspection Service, namely, when questioned by a Postal Inspector from the United States Postal Inspection Service with respect to the use of the money that victim-investor H.S. invested with Planet Youth Entertainment LLC in July 2013, Defendant BICK falsely stated that "70-80% of the money had been on 'artist deposits,'" when in truth and in fact, 70-80% of the money had not been spent on artist deposits, but instead the funds had been spent on personal expenses and as purported investment "returns" to other victim-investors, and only a minimal portion, at most, had been used in any way connected with any artist deposits.

All in violation of Title 18, United States Code, Section 1001.

NOTICE OF FORFEITURE ALLEGATIONS
Forfeiture Related to Wire Fraud
(28 U.S.C. § 2461(c) and 18 U.S.C. § 981(a))

Upon conviction of any of the offenses of wire fraud alleged in Counts One through Eleven of this Indictment, the defendant IAN PARKER BICK shall forfeit to the United States of America, pursuant to Title 18 United States Code, Section 981(a)(1)(c) and Title 28 United States Code, Section 2461(c), all right, title, and interest in any and all property, real or personal, which constitutes or is derived from proceeds traceable to violations of wire fraud (Title 18, United States Code, Section 1343), including but not limited to the following:

A Money Judgment:

A sum of money equal to the total amount of any property, real or personal, which constitutes or is derived from proceeds traceable to each violation of Title 18 United States Code, Section 1343.

If any of the above-described forfeitable property, as a result of any act or omission of the defendant, cannot be located upon the exercise of due diligence, has been transferred, sold to, or deposited with a third party, has been placed beyond the jurisdiction of the Court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, it is the intent of the United States, pursuant to Title 21 United States Code, Section 853(p), as incorporated by Title 28 United States Code, Section 2461(c), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

All in accordance with Title 18 United States Code, Section 981(a)(1) as incorporated by Title 28 United States Code, Section 2461(c), and Rule 32.2(a), Federal Rules of Criminal Procedure.

A TRUE BILL

/s/

FOREPERSON

UNITED STATES OF AMERICA

DEIRDRE M. DALY
UNITED STATES ATTORNEY

MICHAEL S. McGARRY
ASSISTANT UNITED STATES ATTORNEY