UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 3:15 CR  1  (JAM) |
| | : | |
| v. | : | |
| | : | December 4, 2015 |
| IAN PARKER BICK | : | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO MODIFY CONDITIONS OF SUPERVISION AND CROSS-MOTION TO DETAIN OR ALTERNATIVELY TO AMEND CONDITIONS OF SUPERVISION

The Government respectfully submits this memorandum in opposition to defendant Ian Parker Bick's Motion to Modify Bond (Doc. No. 92) and in support of its Motion for Revocation or alternatively to Amend the current conditions of release for Defendant Ian Parker Bick in light of both his conviction after trial and his repeated violations of conditions of release.

As set forth in detail below, The Bail Reform Act of 1984 establishes a presumption in favor of detention where, as here, a defendant has been convicted.  The Government submits that Defendant Bick has not satisfied his burden to demonstrate the requisite standard by clear and convincing evidence that he is a good candidate to remain free on bond pending sentencing. Moreover, as detailed in the Report prepared by the United States Probation Office, Defendant Bick has been unwilling and unable to comply with the conditions of his release and as such, since he is not capable of being properly supervised, he is not a good candidate for release pending sentencing or in the alternative needs much greater conditions of supervision including renewed economic limitations to avoid other individuals being victimized.

## Factual Background

On January 8, 2015, a Federal Grand Jury sitting in New Haven Connecticut returned a 15-count indictment charging defendant Ian Parker Bick with eleven counts of wire fraud in

violation of 18 U.S.C. § 1343 (Counts 1-11), three counts of money laundering, in violation of 18 U.S.C. § 1957 (Counts 12-14), and one count of making a false statement in violation of 18 U.S.C. § 1001 (Count 15).

On November 25, 2015, a Jury returned verdicts of guilty on six (6) counts of wire fraud in violation of 18 U.S.C. § 1343 (Counts 5, 6, 7, 9, 10, and 11) and one (1) count of money laundering in violation of 18 U.S.C. § 1957 (Count 14).  The Jury was deadlocked on three counts of wire fraud (Counts 1, 3, 4) and deadlocked on one count of money laundering (Count 13).  The Jury also returned a verdict of not guilty on two counts of wire fraud (Counts 2 and 8) and returned also returned a verdict of not guilty on one count of making a false statement in violation of 18 U.S.C. § 1001 (Count 15).[1]  Defendant Bick, through counsel moved the Court for a mistrial on the counts on which the jury deadlocked, Counts 1, 3, 4, and 13, which motion was granted by the Court.  Accordingly, Counts 1, 3, 4, and 13 remain pending and thus Defendant Bick stands convicted of multiple felonies, but still has other charges pending.

Thus there is a dual need to continue strict supervision or detention and contrary to the assertion made by Defendant Bick in his motion in paragraph 4, all of the previous purposes for conditions of release still exist.  However, the Court must now determine if post-verdict those conditions set prior to the finding of guilt on seven felonies are still sufficient.  The Government asserts that they are not, especially given Defendant Bick's utter lack of compliance.

**Prior Conditions Set By The Court**

Previously, on January 9, 2015, Honorable Joan G. Margolis, U.S. Magistrate Judge, set the Defendant's conditions of release.  Among the conditions, the Court set the following conditions:

---

[1]    The Government had previously dismissed Count 12 on its on motion, which motion to dismiss was granted.

[Condition 10.]  The defendant is placed in the custody of Michael Bick who agrees to (a) supervise the defendant in accordance with all conditions of release, (b) to use every effort to assure the appearance of the defendant at all scheduled court proceedings and (c) to notify the Court immediately in the event that the defendant violates any conditions of his/her release or is no longer in the custodian's custody….

[Condition 21.]   The defendant shall avoid all contact, directly or indirectly (except through counsel) with any known codefendants and with any person who is or may become a victim or potential witness in the subject investigation or prosecution, including but not limited to: communication on social media (including email, text messages, Facebook and twitter) and shall promptly close his twitter, Facebook accounts without prejudiced to opening new accounts with the permission and supervision of the U.S. Probation Officer.

On February 9, 2015, the Court modified and clarified Condition 21 of the Conditions of

Release as follows:

defendant is to **close all his personal social media accounts** (such as Twitter and Facebook), and with respect to the social media accounts of his business, Tuxedo Junction (such as Twitter, Facebook, Snapchat, Instagram, etc.), commencing on Saturday, 2/7/15, all his activities are to be monitored by a third person, whose identity shall promptly be made known to the U.S. Attorney's Office and to U.S.P.O. If the AUSA or USPO have objections to this person, they shall notify defense counsel and the Court. (emphasis added).

Thereafter, after a hearing was held the Court on February 27, 2015, further clarified and

modified the Conditions of release, related to condition 21 by ordering the following:

With respect to defendant's personal social media accounts (such as Twitter and Facebook),defendant shall provide a prominent notification on his page or wall to his followers, redirecting them to the social media accounts of his business, Tuxedo Junction (which presently include Twitter, Facebook, Snapchat, Instagram, and YouTube). Defendant may retain his personal Facebook page, provided that this prominent notification remains, and his personal Facebook page is not to be used for business purposes. For all other personal social media accounts, such accounts **MUST BE CLOSED ON OR BEFORE MARCH 16, 2015**. **Defendant is not to create any other personal social media accounts**. In addition, the third party monitor, Chris McDonnell, must review all of defendant's personal and business social media accounts at least twice a

- 3 -

week. The AUSA and USPO are free to request the Court to increase the monitoring, as warranted. (Emphasis added).

As set forth in the Violation Report prepared by the United States Probation Office and Submitted to the Court on October 27, 2015, approximately a week before jury selection in this matter, "[o]n September 15, 2015, [Defendant] Bick was instructed by pretrial services to stop running information on the personal page, Ian Parker account, since he still had his business page and per the Court's order to maintain his personal account with a directive to view his business page at Tuxedo Junction.  [Defendant] Bick refused to do so. . .

Also, as referenced in the Violation Report, on October 19, 2015, Defendant Bick was instructed by probation to provide a screen shot of the prominent blog he posted on his personal Facebook page, directing followers to his business page by the end of the day, Defendant Bick responded to the supervising United States Probation Officer that 'it will take too long.' Thereafter, Defendant Bick was instructed by the supervising United States Probation Officer to provide this information when he got home that night, but Defendant Bick failed to do so.  Then, during a follow up conversation on October 20, 2015, Defendant Bick was instructed again by the supervising United States Probation Officer to provide this information and Defendant Bick stated that it takes too long, stated to the United States Probation Officer "you (Probation) can do it."   The Violation Report was filed but not addressed by the Court as the trial was imminent and then pending.

At trial, the Defendant called as a witness Mr. McDonald, the individual who was ordered to monitor his internet accounts and keep a detailed log.  Mr. McDonald admitted on cross examination that he had not been supervising the defendant's account to the satisfaction of the United States Probation Office and also acknowledged that he was not sure if he could maintain the required supervision.

- 4 -

On November 25, 2015, after the Jury had returned the verdict of Guilty on the seven counts referenced above, Defendant Bick, through counsel, asked the Court to relax the conditions relating to social media as there had been a verdict on some of the counts. The Government opposed the request based in part on the fact that there were still counts pending against Defendant Bick. The Court did not grant the request to modify bond, left the conditions in place as set by Judge Margolis, and informed the parties to address the matter before the United States Magistrate Judge. The Court was clear that the conditions as set (and detailed above) were still in place. Nevertheless, notwithstanding the clear articulation by United States District Judge Jeffrey Alker Meyer, that the conditions were in place, including those set forth above that the Defendant not utilize social media to reach out to victims and potential witnesses, mere hours later the Defendant posted on a personal page (*i.e.*, Ian Parker web-page) a page he was previously ordered not to open, information that was received by and/or viewed by individuals who had been witnesses at trial and who would be witnesses at any eventual retrial on the pending counts. (*See* Attachments A and B). The fact that witnesses, including victim-witnesses, received the information *via* the internet was the precise harm the Court sought to avoid when first imposing the internet restrictions as part of the no contact with victims and witnesses restrictions.

## Discussion

The Bail Reform Act of 1984 ("BRA" or "The Act") "establishes a presumption in favor of detention" where, as here, a defendant has been convicted. *United States v. Abuhamra*, 389 F.3d 309, 319 (2d Cir. 2004). The Government has a "strong and obvious" interest "in detaining defendants who have been found guilty beyond a reasonable doubt of serious crimes." *Id.* at 320. Such "detention promotes public safety by removing a presumptively dangerous person

from the community; it also encourages general respect for the law by signaling that a guilty person will not be able to avoid or delay imposition and service of the sentence prescribed by law." *Id.*

Title 18, United States Code, Section 3143(a) provides that:

> the judicial officer **shall order** that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence, other than a person for whom the applicable guideline promulgated pursuant to 28 U.S.C. 994 does not recommend a term of imprisonment, **be detained**, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c). (emphasis added).

Thus, there is a presumption in favor of detention when a defendant, like Bick, is convicted and is awaiting sentencing. The defendant bears the burden to prove by clear and convincing evidence that he is not likely to flee or pose danger to the community. *See* Rule 46(c) ("The burden of establishing that the defendant will not flee or pose a danger to any other person or to the community rests with the defendant"). The Government submits that Defendant Bick has not satisfied his burden to demonstrate the requisite standard by clear and convincing evidence that he is a good candidate to remain free on bond pending sentencing.

The reasons are as follows:

*First*, as the Court itself observed Defendant Bick perjured himself during trial when he testified. By convicting Bick on seven of the counts presented to the Jury, including six counts of wire fraud and one count of money laundering, the jury clearly rejected Bick's self-serving testimony where he testified he had no intent to defraud his victims and they rejected his baseless assertion that none of the 15 victims who testified ever asked about wholesale electronics or the use of their funds for the purchase and subsequent sale of wholesale electronics. Significantly, Bick provided the jury obvious false statements when he told the jury that the victims who

testified, many of whom had e-mails and contracts to support their version of the facts, simply "never asked" about the use of their money and "only cared about the interest rate." Clearly, by returning multiple verdicts of guilty, the jury found Bick to lack credibility. His willingness to testify falsely in his own defense demonstrates, among other things, a lack of respect for the role of the Court.

Moreover, this false testimony was not the only instance of Bick seeking to obstruct justice. Bick was caught in an obvious lie when he was presented with – and sought to explain away – his sworn testimony from before the Connecticut Department of Baking Securities Division, when he testified that one victim, Mr. Kevin Bill, had 'only a handshake agreement.' This testimony was obviously false as just a few days earlier the jury was presented and had seen the written contracts and heard specific testimony of the type of pen that had been used in signing the written contracts. Again, the willingness to testify falsely before the Connecticut Department of Banking and before this Court should cause the Court to hesitate before concluding that the Defendant will comply with any Order of the Court or instruction from the Probation Office. The Government asserts that he is a sever risk to not comply with any set of conditions.

Additionally, during the trial, the Government presented testimony regarding the production of documents in response to Grand Jury subpoenas and two sets of exhibits, including Government Exhibits 604 (Attachments C) and 604A (Attachment D) that established that prior to producing documents to his attorney, Defendant Bick wrote "Artist Deposits for concerts" on what is now Government Exhibit 604A. Trial testimony from three different witnesses established that the check was not for Artist Deposits but was actually provided to David Osei as a return payment on his father's investment. Testimony of a witness from the Connecticut

Department of Banking and the U.S. Postal Inspector established that Bick wrote on the check *after* being served with the Grand Jury Subpoena in an effort to obstruct the Grand Jury investigation.

The Government is confident that neither Attorney Einhorn, nor any other attorney nor employee at Attorney Einhorn's firm, played any role in the writing on the check or were even aware of the creation of this fraudulent representation on the exhibit. Rather, the Government firmly believes that Defendant Bick sought to obstruct justice by writing "Artist Deposits for concerts" on to the check that became Exhibit 604A in an effort to create the appearance that all monies to David Osei were necessarily concert related. In fact, Mr. Klem Klementon from the Connecticut Department of Banking testified that he was provided the original copies of documents by Bick, made copies of those documents, and provided the originals back to the Defendant. That same day the Defendant was provided a subpoena by the United States Postal Inspectors directed at the entities he controlled. The responsive documents were thereafter provided by the Defendant on July 30, 2014 which included the exhibit with the hand writing that was not present on the documents when they were provided to the Department of Banking.

Bick's willingness to commit perjury and his efforts to seek to obstruct justice by altering evidence in response to a Grand Jury subpoena (as well as his well-documented failure to follow the Court's orders regarding use of social media to influence witnesses) pose a significant danger that Bick will continue to obstruct justice in an effort to thwart the re-trial of the still pending counts and also to impact the sentencing process. This too should weigh against continued release.

Third, Defendant Bick has now been convicted by a jury of seven felony offenses that carry a maximum sentence in the aggregate of 130 years in prison. A preliminary Guidelines

analysis by the Government indicates that Defendant Bick has an advisory Guidelines range of 63-78 months, which translates to five to six and a half years imprisonment.   Under these circumstances, Bick certainly has an increased incentive to flee and, at a minimum, to continue to endeavor to obstruct justice.   While Bick did appear at trial, his willingness to appear may have been shaped by his erroneous belief that he could testify his way out of a conviction.   Now that Bick realizes that his testimony did not fool the jury, he may be likely to re-evaluate his options.   Given the prospect of a potential lengthy jail sentence, his apparent contempt for the sanctity of the judicial process, and his complete inability to follow the instructions of the United States Probation Office, Bick is not a strong candidate for bail pending sentencing, or for that matter, bail pending appeal.

Fourth, Bick has shown a willingness to violate the law to raise funds before and is likely to do so if left out on release.   Given his current choice of employment in organizing and promoting concerts, and given the volume of trial testimony regarding the failure rate of the financial endeavors of such concerts, coupled with his testimony that he has absolutely no personal assets and his purported lack of access to funds to pay his own trial counsel, the Government is concerned that Bick will seek to use his skills of deception in an effort to raise money from unsuspecting new victims in the continued hopes of "making it big" as a concert promoter.   In fact, while on the stand under oath, Bick indicated that he not only "hopes" but "knows" he will make it big as a concert promoter.   Yet to date it appears he has not paid back any of the victims from his prior scheme for which he now stands convicted.

Bick should not be permitted to victimize more individuals in his continued quest to obtain funds from others to make it in the concert promotion world or any other business venture as a self-proclaimed entrepreneur.   To allow him unsupervised access to potential victims would

clearly constitute economic danger to the community.  And given his utter contempt for the supervision offered by the United States Probation Office it is difficult to see how this potential economic danger could be eliminated or even curtailed.

As the Court is well aware, his trial testimony regarding his lack of assets and his living at home with his parents as well as the need to obtain the appointment of counsel clearly demonstrate that the defendant has not had a legitimate source of significant income since at least before the scheme for which he stands convicted began.  Based on the significant evidence the Government gathered and introduced at trial in this matter, it is obvious that the defendant has been engaged in illegal fraudulent conduct for a significant length of time.  Were the defendant to be permitted to remain on bond (or remain on bond with only the current conditions), there is a significant likelihood that his illegal conduct in seeking to acquire funds would continue.  In fact, one of Bick arguments at trial was that he was working to pay people back and his concert business, which was replete with past failures, was his purported mechanism for doing so.  Yet his ability to make any money was belied by his own witness.  For example, Mr. Coccamoe, testified that Bick lost significant money in his failed attempt to run the Skyy Bar and Mr. McDonald, who works with Bick as a Disc Jockey and consultant (as well as the Court appointed internet monitor), testified that he gets paid in advance when working with the defendant.

As his self-serving testimony that he did not lie to investors was soundly rejected by the jury and as the manner in which Bick conducted businesses was established to be financed by fraud, the Court could well conclude that now, post-trial, Bick may begin anew working on a "venture" that includes defrauding new investors (or loaners) and that he may seek do so *via* the internet or with the assistance of social media.

The potential for illegal conduct about which the Government is concerned, includes the continued acquiring of fraudulently obtained proceeds and the subsequent spending of any such proceeds as established by Count 13 for which he was convicted.  Thus, this defendant poses a real potential for economic danger to the community.

Economic danger to the community is clearly a basis for detention.  *United States v. Delker*, 757 F.2d 1390, 1393 (3d Cir. 1985); *see also United States v. Reynolds*, 956 F.2d 192, 193 (9th Cir. 1992); *United States v. Vance*, 851 F.2d 166 (6th Cir. 1988) (discussing detention in a post-conviction context).  In enacting the Bail Reform Act, Congress was concerned not only with potential harm to victims or witnesses, but with the safety of the "community as a whole."  *Vance*, 851 F.2d at 169; *Delker*, 757 F.2d at 1393, 1398-99.  As the court noted in *United States v. Harris*, "[t]he danger against which a court must safeguard encompasses much more than the risk of physical violence. . . .  Often it is economic or pecuniary interests of a community rather than physical ones which are most susceptible to repeated danger by a released defendant."  920 F. Supp. 132, 133 (D. Nev. 1996).  *Cf. United States v. Masters*, 730 F. Supp. 686, 689 (W.D.N.C. 1990) (in rejecting bail pending appeal the Court stated, the "Court believes it must also consider the danger of a person who continues to participate in possibly fraudulent schemes. . . .  Frankly, the Court believes Defendant is an unrepentant con-artist who will continue to prey on any person gullible enough to listen to his sales talk.  Nothing short of post-conviction incarceration will ensure the safety of the community.").

The defendant here, as in *Masters*, 730 F. Supp. 686 at 689, is unrepentant con-man and to this end he literally described the finding of guilt by the jury in which it was found beyond a reasonable doubt that he defrauded numerous victims out of hundreds of thousands of dollars as

a "huge win." (*See* Attachment A).  This unapologetic lack of remorse should give the Court great pause in trusting him without layers of supervision.

Accordingly, the Government contends that were Bick to be allowed to remain released on conditions without significant supervision over his conduct and his economic activities for any significant period of time, the defendant would be an economic threat to the community. What makes the situation even more problematic is Bick's unwillingness to be supervised.  How is the United States Probation office to determine if he is or is not an economic danger to the community or if he is seeking to influence witnesses when he will simply not follow the Court ordered supervision.

It is Bick's burden to establish that he is not likely to flee and not an economic danger to the community and the Government submits that he has not satisfied this burden.  Even assuming *arguendo* that Bick could sustain his burden to demonstrate that he is not likely to flee or pose an economic danger to the community, the current bail conditions would still need to be modified.

As of now, Bick has no curfew whatsoever and he refuses to abide by the Court Ordered internet restrictions.  In the event the Court chooses not to detain Bick pending sentencing, the Government recommends that the following conditions be imposed:

 1.  A curfew of 7 p.m. be imposed on Bick for each day of the week and such curfew be enforced by the use of electronic monitoring and a GPS tracking device to be worn by Bick at all times;

 2.  Travel be restricted to the State of Connecticut;

 3.  All internet access be removed from Bick's residence and Bick be prohibited from using any other device to access the internet, as it is clear from the evidence gathered and introduced at trial including the numerous e-mails, text messages, and fraudulent test messages

such as the bogus text message indicating his Aunt and Uncle would wire him $150,000, and his co-conspirator testimony regarding phone Apps fake that create false bank statements,  that he has used the internet to commit and further his crimes.  Moreover, he has repeatedly failed to comply with the Court Ordered restrictions on the use of the internet and social media and the efforts to walk a middle ground with a court appointed monitor have failed;

4.  Bick be required within 30 days of the Court's order setting modified conditions to fully execute a financial disclosure statement and submit such statement to the Probation Officer assigned to this matter listing all assets including but not limited to cash, jewelry, consumer electronics, automobiles, information regarding all bank accounts held by him individually, or jointly with any member of his immediate family, and any trust or interest or promised interest in any trust account or other custodial account held for him in the future;

5.  Bick be prohibited from engaging in any financial transaction in excess of $500 and not be permitted to seek any loans, open any new credit cards or lines of credit, or solicit any financial investment of any kind; and

6.  Clark obtain the signatures of two additional sureties to supplement the current surety and request that the two new sureties execute a secured bond in the amount of $300,000 to ensure that Bick appear for sentencing and abide by the conditions of bail.  Now that Bick has been convicted and is facing a likely and substantial jail sentence, new sureties should be required to execute a secured bond putting their money behind Bick's purported willingness to adhere to his bail conditions.  Especially given that the initial third party monitor who was order to insure Defendant Bick complied with his conditions (*See* condition 10 above) was unable to do so.

Finally, in light of Bick's conviction on seven felony counts, the Government is concerned that Bick may endeavor to obstruct justice in an effort to thwart the sentencing process by attempting to influence victim-witnesses either by promises of being paid more money than other victims or promises of being paid sooner than other victims, attempting to create other false exculpatory exhibits similar to Government Exhibit 604A, or engaging in other criminal conduct.  As the Court knows well, there are numerous victims of Bick's fraudulent and criminal conduct, many of whom testified at trial.  To ensure that these victims can plan to attend the sentencing, to ensure that Bick will appear for sentencing in a timely manner, and to ensure that there are no new victims of Bick's criminal conduct, the Government requests that the Court maintain the firm date for sentencing of march 2, 2016.  *See* 18 U.S.C. § 3771(A)(4) ("A crime victim has . . . (4) The right to be reasonably heard at any public proceeding in the district court involving . . . sentencing").  In addition, on behalf of the victims of defendant's criminal conduct, the Government requests that the Court not grant any subsequent requests to adjourn the sentencing.  *See* 18 U.S.C. § 3771(A)(7)  ("A crime victim has . . . (7) The right to proceedings free from unreasonable delay").

## Conclusion

For the reasons set forth above, the Government requests that the Court revoke the

defendants release or in the alternative significantly modify the current conditions of release for

Defendant Bick.


Respectfully submitted,


DEIRDRE M. DALY
UNITED STATES ATTORNEY

/s/Michael S. McGarry

MICHAEL S. McGARRY
ASSISTANT UNITED STATES ATTORNY
FEDERAL BAR NO. CT25713
157 CHURCH STREET, 25th FLOOR
NEW HAVEN, CT 06510
203-821-3700

/s/ Christopher W. Schmeisser

CHRISTOPHER W. SCHMEISSER
ASSISTANT UNITED STATES ATTORNEY
FEDERAL BAR NO. CT14806
157 CHURCH STREET, 25TH FLOOR
NEW HAVEN, CT 06510
203-821-3700

<u>C E R T I F I C A T I O N</u>

I hereby certify that on December 4, 2015, the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's system.

/s/
MICHAEL S. McGARRY
ASSISTANT UNITED STATES ATTORNEY