UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA,

    v.

IAN BICK,
    *Defendant*.

No. 3:15-cr-00001 (JAM)

**RULING DENYING POST-TRIAL MOTIONS**

    Defendant moves for judgment of acquittal pursuant to Fed. R. Crim. P. 29(c) and for a new trial pursuant to Fed. R. Crim. P. 33. For the reasons set forth below, I will deny both motions.

    Defendant was charged with multiple federal crimes arising from his extensive financial dealings with friends and others whom he persuaded to give him money in return for astronomically high short-term rates of return. The core of the Government's case was that defendant fraudulently misled people about the purposes for which he was using the money and that he perpetuated the fraud in a Ponzi-like fashion by repaying people in order to encourage them to give him still more funds under similar fraudulent pretenses. Following an extended jury trial in November 2015, the jury convicted defendant on many of the charges, including six counts of federal wire fraud and one count of money laundering.

    The standard governing the Court's review of defendant's motion for a judgment of acquittal pursuant to Fed. R. Crim. P. 29 is well established. The Court must review the evidence in the light most favorable to the prosecution and sustain the jury's verdict if any rational trier of fact could have found the evidence sufficient to establish the elements of each crime beyond a reasonable doubt. *See United States v. Brock*, 789 F.3d 60, 63 (2d Cir. 2015) (*citing Jackson v.*

*Virginia*, 443 U.S. 307, 319 (1979)). "The established safeguards of the Anglo-American legal system leave the veracity of a witness to be tested by cross-examination, and the credibility of his testimony to be determined by a properly instructed jury*." Hoffa v. United States*, 385 U.S. 293, 311 (1966).

As to defendant's motion for new trial pursuant to Fed. R. Crim. P. 33, the Court may set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice. *See United States v. Truman*, 688 F.3d 129, 141 (2d Cir. 2012). "Because the courts generally must defer to the jury's resolution of conflicting evidence and assessment of witness credibility, [i]t is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment," such as "where testimony is patently incredible or defies physical realities." *United States v. McCourty*, 562 F.3d 458, 475-76 (2d Cir. 2009).

Defendant advances five grounds for his motions. First, he contends that the evidence was insufficient to support the jury verdict on Count 14 for money laundering. Doc. #140 at 4-7. This argument lacks merit for all the reasons advanced in the Government's opposition memorandum. The money laundering transaction at issue involved defendant's purchase of jet skis for $21,900. Although defendant claims that "the jury could not have known what the form of the illegal activity was, and [that] there was no prior finding of wire fraud in the verdict," Doc. #140 at 7, the evidence at trial was clear beyond cavil that this transaction was almost entirely funded by $50,000 in funds that defendant received from Rosemary Paccione-Burke in the course of a transaction that was itself the subject of the wire fraud conviction under Count 6 of the indictment. Doc. #152 at 24-27 (summarizing evidence). The evidence was clearly sufficient to support the jury's verdict on the money laundering charge set forth in Count 14.[1]

---

[1] To the extent that defendant otherwise challenges the sufficiency of evidence to support his conviction for wire fraud under Count 6 of the indictment, that separate challenge is addressed below.

Second, defendant faults the Court for failing to make a *Bourjaily/Geaney* finding to support the admissibility of co-conspirator statements adduced through the testimony of John Wrobel.  Doc. #140 at 7-9; *see also Bourjaily v. United States*, 483 U.S. 171 (1987); *United States v. Geaney*, 417 F.2d 1116 (2d Cir. 1969). This argument also lacks merit for all the reasons advanced by the Government in its opposition memorandum. Defendant fails to identify any particular statement by Wrobel that would only have been admissible for its truth as a co-conspirator statement pursuant to Fed. R. Evid. 801(d)(2)(E). Although defendant complains that "the government offered the testimony of John Wrobel who testified to numerous hearsay statements from Ian Bick," Doc. #140 at 9, this contention misses the point that any statements by defendant Ian Bick would have been independently admissible as statements of a party opponent pursuant to Fed. R. Evid. 801(d)(2)(A), apart from any requirements under *Bourjaily/Geaney* for the admissibility of co-conspirator statements pursuant to Fed. R. Evid. 801(d)(2)(E). Nor did defendant object contemporaneously at trial on grounds of Rule 801(d)(2)(E) or *Bourjaily/Geaney* to any particular statement of Wrobel. Even assuming there were error and that defendant timely objected, I would doubtlessly have concluded at trial on the basis of Wrobel's testimony as well as other corroborating evidence that a preponderance of the evidence established that a conspiracy existed between defendant and Wrobel to allow the admission of any co-conspirator statements.

Third, defendant contends that his Sixth Amendment rights under the Confrontation Clause were violated by the admission of contracts involving the defendant and third parties that were obtained by subpoena from defendant's companies or by subpoena from defendant's email communications using his Yahoo email account. Doc. #140 at 9-10. Defendant raised the same objection at trial, and I overruled the objection on the ground that these contracts did not contain

"testimonial" statements within the meaning of *Crawford v. Washington*, 541 U.S. 36 (2004). Defendant's post-trial memorandum does not cite any cases to cast doubt on the correctness of the Court's prior ruling, and I agree with the reasons set forth at length by the Government for why the contract documents are not testimonial for purposes of the Confrontation Clause. Doc. #152 at 32-35; *see also United States v. Tischler*, 572 Fed. App'x. 63 (2d Cir. 2014) (discussing *Crawford* and progeny and noting in relevant part that "[a]n item of evidence is 'testimonial' if its primary purpose … is to establish or prove past events potentially relevant to later criminal prosecution" and that "[b]usiness records are not testimonial when they are created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial") (internal quotation marks and citations omitted).

Fourth, defendant contends that "the victims in this case executed loan agreements" with defendant's companies and that the transactions at issue "were not investments and thus not evidence of a scheme to defraud." Doc. #142 at 1. This argument also lacks merit for the reasons set forth in the Government's opposition memorandum. Whether the defendant's relationship with the persons who gave him money is classified as a "lending" or "investing" relationship, a reasonable jury could have credited the evidence at trial that showed that defendant made misrepresentations to induce these persons to give their money to defendant. The evidence of these misrepresentations was sufficient to support defendant's convictions for wire fraud. Despite the fact that these misrepresentations were oral and not set forth in the parties' written agreements with defendant, the parol evidence is not a bar to showing the existence of fraud. *See, e.g., Arnold v. Nat'l Aniline & Chem. Co.*, 20 F.2d 364, 370 (2d Cir. 1927); *Chace v. Bankers Trust Co.*, 1990 WL 250181, at *3 (S.D.N.Y. 1990).

Lastly, defendant contends that the evidence of wire fraud was insufficient in light of the Second Circuit's recent decision in *U.S. ex rel. O'Donnell v. Countrywide Home Loans, Inc.*, 2016 WL 2956743 (2d Cir. 2016), and its conclusion that "where allegedly fraudulent misrepresentations are promises made in a contract, a party claiming fraud must prove fraudulent intent at the time of contract execution" and that "evidence of a subsequent, willful breach cannot sustain the claim." *Id.* at *6. The principles set forth in *Countrywide* are not new and cast no doubt on the jury's verdict in this case. For the reasons set forth in the Government's opposition memorandum (Doc. #152 at 4-21, 38-41), the trial evidence was amply sufficient to allow a reasonable jury to conclude that defendant acted with intent to defraud from the outset and made misrepresentations that in turn resulted in each of the wire fraud transactions for which the jury convicted defendant. The fact that defendant continued to make misrepresentations to victims after they had parted with their money does not vitiate the additional evidence that he also engaged in fraudulent conduct with intent to defraud at an earlier time.

## CONCLUSION

For the reasons set forth above, the motions for judgment of acquittal and for a new trial are DENIED.

It is so ordered.

Dated at New Haven this 20th day of June 2016.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge